# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD SMITH** | : |
| 6205 Woodley Road | : |
| Clinton, Maryland 20735 | : |
| | : |
| and | : |
| | : |
| **RANDY MCCULLOUGH** | : |
| 1001 Allward Drive | : |
| Waldorf, Maryland 20602 | : |
| | : |
| and | : |
| | : |
| **DENNIS HARRIS** | : |
| 38430 Pleasant View Drive | : |
| Charlotte Hall, Maryland 20622 | : |
| | : |
| and | : |
| | : |
| **ANGELO POWELL** | : |
| 7903 Daniel Drive | : |
| Forestville, Maryland 20747 | : |
| *Plaintiffs* | : |
| | : |
| vs. | : |
| | : **CIVIL NO.:** |
| | : |
| | : |
| **POTOMAC ELECTRIC POWER COMPANY** | : |
| 701 Ninth Street, N.W., Suite 1300 | : |
| Washington, D.C. 20068 | : |
| SERVE: Corporate Creations Network Inc. | : |
| 2 Wisconsin Circle, Suite 700 | : |
| Chevy Chase, Maryland 20815 | : |
| *Defendant* | : |

## **COMPLAINT**
**(Age Discrimination in Violation of the Age Discrimination in Employment Act-Hostile Work Environment)**

**JURY TRIAL DEMANDED**

1

COME NOW the Plaintiffs, **RICHARD SMITH**, **RANDY MCCULLOUGH**, **DENNIS HARRIS**, and **ANGELO POWELL**, (collectively, along with **JOHN G. WEBB**, the Plaintiff in related **Case Number 8:18-cv-03303,** the **VRM Mechanics**) by and through counsel, Edward James Leyden and LEYDEN LAW LLC, to file this Complaint and as cause therefore states as follows:

## I. INTRODUCTION

1. This is a civil action for injuries that the similarly-situated Plaintiffs, **Richard Smith**, **Randy McCullough**, **Dennis Harris**, and **Angelo Powell** (in conjunction with **John G. Webb**, the Plaintiff in Case Number **8:18-cv-03303**) sustained as a result of the systemic and deliberate employment policy in which the Defendant Potomac Electric Power Company (PEPCO) engaged during the period between 2009 and 2017 pursuant to the so-called "Attachment W" to the Collective Bargaining Agreement (the CBA) between PEPCO and Local 1900 of the International Brotherhood of Electrical Workers (the IBEW).

2. The intended and practical effect of PEPCO's Attachment W's employment policies and practices were to segregate the employees, including the Plaintiffs, who worked in the Defendants' Vehicle Resource Management (VRM) Department, (which was formerly called "Fleet Services") into two distinct but unequally-treated occupational groups.

3. One group was the Fleet Technician Occupational Group (Fleet Technicians). To be a Fleet Technician, a VRM employee, first, had to successfully complete an "ASE Certification Program," including written tests, that had been developed independently of PEPCO by the National Institute for Automotive Service Excellence (NIASE). VRM

2

employees who were recruited from outside of PEPCO into the Fleet Technician Group were granted a period of 18-months after beginning work to obtain ASE certification.

4. The other group of employees who worked in the VRM between 2009 and 2017 was the Automotive Mechanic Occupational Group (the VRM Mechanics). The VRM Mechanics were generally those employees who already been members of the VRM when PEPCO implemented Attachment W in 2009. Under the terms of Attachment W, an Automotive Mechanic could become a Fleet Technician by obtaining ASE Certification, at which time PEPCO would award the individual with a $1,250 bonus.

5. Plaintiff Richard Smith's date of birth is March 15, 1953. Mr. Smith joined PEPCO on August 2, 1982 as a Garage Attendant B in the Transportation Maintenance Department. When Mr. Smith retired on January 1, 2015, his job classification was Fleet Technician A in the VRM.

6. Plaintiff Randy McCullough's date of birth is September 13, 1955. Mr. McCullough was promoted several times during his tenure with PEPCO, which began on June 8, 1974, and he retired in December 2017 as a Lead Mechanic, the top level of his job classification in the VRM.

7. Plaintiff Dennis W. Harris's date of birth is January 13, 1953. Mr. Harris was hired by PEPCO in July 1981 as a Garage Attendant B in the Transportation Maintenance Department. Mr. Harris was promoted several times over the next several years and became an Automotive Mechanic A in 1986. Mr. Harris retired on August 1, 2015.

8. Plaintiff Angelo Powell's date of birth is January 22, 1955. Mr. Powell is an African-American male. Mr. Powell was hired by PEPCO in April 1978 as a Garage Attendant B in the Transportation Maintenance Department. Over the following years, Mr. Powell

was promoted to Lead Automotive Mechanic grade 17, which is the highest level for his job classification in the VRM. Mr. Powell retired from PEPCO on March 1, 2017.

9. As Automotive Mechanics, each of the Plaintiffs was in a disadvantageous position in comparison to Fleet Technicians despite being otherwise being similarly-situated and performing essentially the same duties within the VRM.

10. For example, it was the accepted policy and practice within the VRM that the managers and supervisors (who, generally, reported to Mr. Nimmerichter) would assign opportunities to accrue overtime pay *only* to Fleet Technicians and *not* to Automotive Mechanics.

11. Furthermore, Automotive Mechanics were foreclosed from filling in temporarily in a Lead position in the event of an absence; this was so even if a particular Automotive Mechanic was senior in years of service and practical experience to the Fleet Technicians who usually filled the role as Lead.

12. Moreover, Attachment W placed certain Automotive Mechanics (*namely*, those in pay grades 16 and 17) on the so-called "restricted roster." Being on this "restricted roster" froze an Automotive Mechanic at his then-current rank and rendered him ineligible for further advancement in the VRM. Indeed, an Automotive Mechanic's job slot was eliminated from the VRM when and if he should retire from PEPCO.

13. As a result of their tenure at the time, in 2009, when PEPCO implemented Attachment W, the members of the Automotive Group were generally over 40 years old and, with a few exceptions, older in age than were members of the Fleet Technician Group.

14. The age-based discriminatory impact of Attachment W that PEPCO might otherwise reasonably characterize as a benign byproduct of the prevailing demographics of the

VRM workforce becomes, instead, insidious when viewed in light of the blatantly ageist statements and practices of certain members of the VRM management team, most especially, Mr. Nimmerichter.

## II. PARTIES

8. Each of the Plaintiffs is a resident of the State of Maryland. At all times relevant hereto, the Plaintiff was an employee within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 630(f).

9. Defendant Potomac Electric Power Company is an incorporated entity registered with the Maryland State Department of Assessments and Taxation (SDAT) under Department ID Number F00515098. This Defendant is a regulated electric utility that delivers electricity to customers in the District of Columbia and Maryland. In March 2016, the Potomac Electric Power Company merged with Exelon Corporation and, as a result of the merger, is now part of the Exelon family of utilities. Potomac Electric Power Company operates throughout the state of Maryland, including at a facility known as the "Forestville Service Center," located in Forestville, Maryland, which is where the Plaintiff, Mr. Webb, was and is employed. The Maryland resident agent for Potomac Electric Power Company is Corporate Creations Network, Inc., located at 2 Wisconsin Circle, Chevy Chase, Maryland 20815. At all times relevant hereto, Defendant Potomac Electric Power Company was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C. § 2000e(b), and 29 U.S.C. § 630(b).

## III. JURISIDCTION AND VENUE

10. Jurisdiction in this Honorable Court is invoked pursuant to 28 U.S.C § 1331, 29 U.S.C. § 626(c); 42 U.S.C. § 2000e-5(f); and 28 U.S.C. § 1367 (*Supplemental Jurisdiction*).

11. On October 28, 2015, Plaintiff Richard Smith filed a Charge of Discrimination against PEPCO with both the D.C. Office of Human Rights and the United States Equal Employment Opportunity Commission (EEOC) under the Age Discrimination in Employment Act of 1967 (ADEA). [*See* attached and marked as "Plaintiffs' Exhibit No. 1."]  In his Charge of Discrimination, Mr. Smith alleged that the manager of his department, Harvey Nimmerichter, preferred younger mechanics to work in the department over older employees and set higher expectations for older employees so that they would fail. Mr. Nimmerichter accomplished these purposes, Mr. Smith further alleged, through his administration of the so-called ASE Test. Under Mr. Nimmerichter's management, only older workers were required to pass the ASE test and, what is more, were handicapped in doing so due to reasons of cost and lack of support from PEPCO with provided study materials, Mr. Smith continued. Furthermore, Mr. Smith stated, Mr. Nimmerichter did not want to promote Mr. Smith even after Mr. Smith had passed the ASE Test because of Mr. Smith's seniority and dislike for the IBEW. Moreover, Mr. Smith alleged, Mr. Nimmerichter recommended to Mr. Smith that he should leave PEPCO or retire and treated Mr. Smith as if he should not work in Mr. Nimmerichter's department. This treatment from Mr. Nimmertichter, thus, resulted in a hostile work environment, Mr. Smith concluded, that forced him to resign on January 1, 2015 in what amounted to a constructive discharge.

12. On March 20, 2019, the Baltimore Field Office of the EEOC issued to Mr. Smith a "Notice of Right to Sue (Issued on Request)," without issuing findings of fact. [See attached and marked as "Plaintiffs' Exhibit No. 2."]

13. On November 5, 2015, Plaintiff Randy McCullough filed a Charge of Discrimination against PEPCO with the United States Equal Employment Opportunity Commission (EEOC) under the Age Discrimination in Employment Act of 1967 (ADEA). [*See* attached and marked as "Plaintiffs' Exhibit No. 3."] In his Charge of Discrimination, Mr. McCullough alleged that the manager of his department, Harvey Nimmerichter, preferred younger mechanics to work in the department over older employees and set higher expectations for older employees so that they would fail. Mr. Nimmerichter accomplished these purposes, Mr. McCullough further alleged, through his administration of the so-called ASE Test. Under Mr. Nimmerichter's management, only older workers were required to pass the ASE test and, what is more, were handicapped in doing so due to reasons of cost and lack of support from PEPCO with provided study materials, Mr. McCullough continued. Furthermore, Mr. McCullough stated, Mr. Nimmerichter did not want to promote Mr. McCullough even after Mr. McCullough had passed the ASE Test because of Mr. McCullough's seniority and dislike for the IBEW. Moreover, Mr. McCullough alleged, Mr. Nimmerichter recommended to Mr. McCullough that he should leave PEPCO or retire and treated Mr. McCullough as if he should not work in Mr. Nimmerichter's department. This treatment from Mr. Nimmertichter, thus, resulted in a hostile work environment, Mr. McCullough concluded. Mr. McCullough retired from PEPCO in December 2017.

14. On March 18, 2019, the Baltimore Field Office of the EEOC issued to Mr. McCullough a "Notice of Right to Sue (Issued on Request)," without issuing findings of fact. [See attached and marked as "Plaintiffs' Exhibit No. 4."]

15. On January 28, 2016, Plaintiff Dennis Harris filed a Charge of Discrimination against PEPCO with both the Prince George's County Human Relations Commission and the United States Equal Employment Opportunity Commission (EEOC) under the Age Discrimination in Employment Act of 1967 (ADEA). [*See* attached and marked as "Plaintiffs' Exhibit No. 5."] In his Charge of Discrimination, Mr. Harris alleged that the manager of his department, Harvey Nimmerichter, preferred younger mechanics to work in the department over older employees and set higher expectations for older employees so that they would fail. Mr. Nimmerichter accomplished these purposes, Mr. Harris further alleged, through his administration of the so-called ASE Test. Under Mr. Nimmerichter's management, only older workers were required to pass the ASE test and, what is more, were handicapped in doing so due to reasons of cost and lack of support from PEPCO with provided study materials, Mr. Harris continued. Furthermore, Mr. Harris stated, Mr. Nimmerichter did not want to promote Mr. Harris because of Mr. Harris' seniority and dislike for the IBEW, placing him on a Restricted Roster that effectively froze Mr. Harris' pay scale. Moreover, Mr. Harris alleged, Mr. Nimmerichter recommended to Mr. Harris that he should leave PEPCO or retire and treated Mr. Harris as if he should not work in Mr. Nimmerichter's department. This treatment from Mr. Nimmertichter, thus, resulted in a hostile work environment, Mr. Harris concluded. Mr. Harris retired from PEPCO on August 1, 2015.

16. On March 19, 2019, the Baltimore Field Office of the EEOC issued to Mr. Harris a "Notice of Right to Sue (Issued on Request)," without issuing findings of fact. [See attached and marked as "Plaintiffs' Exhibit No. 6."]

17. On February 11, 2016. Plaintiff Angelo Powell filed a Charge of Discrimination against PEPCO with both the Prince George's County Human Relations Commission and the United States Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1967 and the Age Discrimination in Employment Act of 1967 (ADEA). [*See* attached and marked as "Plaintiffs' Exhibit No. 7."]  In his Charge of Discrimination, Mr. Powell alleged that the manager of his department, Harvey Nimmerichter, preferred younger mechanics to work in the department over older employees and set higher expectations for older employees so that they would fail. Furthermore, Mr. Powell stated, he was denied opportunities for business trips that were awarded to similarly-situated PEPCO employees who were outside the protected classes to which Mr. Powell belonged (namely, over the age of 40 years old and African-American). Moreover, Mr. Powell alleged, Mr. Nimmerichter recommended to Mr. Powell that he should leave PEPCO or retire and treated Mr. Powell as if he should not work in Mr. Nimmerichter's department. This treatment from Mr. Nimmertichter, thus, resulted in a hostile work environment, Mr. Powell concluded. Mr. Powell retired from PEPCO on March 1, 2017.

18. On March 20, 2019, the Baltimore Field Office of the EEOC issued to Mr. Powell a "Notice of Right to Sue (Issued on Request)," without issuing findings of fact. [See attached and marked as "Plaintiffs' Exhibit No. 8."]

19. Each of the Plaintiffs had, thus, exhausted his respective administrative remedies prior to filing this action.

20. Accordingly, both venue and jurisdiction are appropriate and proper in this Honorable Court.

## IV. <u>FACTS GIVING RISE TO RELIEF</u>

### The Introduction and Withdrawal of Attachment W to and from the VRM

16. Before March 2016, Potomac Electric Power Company operated under equal employment opportunity policies that prohibited discrimination based on unlawful factors, including age and race, and which, furthermore, prohibited harassment in the workplace.

17. Beginning in March 2016, Potomac Electric Power Company came under the EEO policies of Exelon Corporation, which are represented to be equally robust.

18. In 2009, Potomac Electric Power Company had supplemented its existing Collective Bargaining Agreement (CBA) with Local 1900 of the International Brotherhood of Electrical Workers (IBEW), the collective bargaining unit which represents the Plaintiff, Mr. Webb, by adding an "Attachment W."

19. The ostensible purpose of Attachment W was to adjust to the evolving technology that powered the company's vehicles, including the introduction of a hybrid fleet, by assuring that the mechanics who serviced these vehicles possessed the skills to be able to work effectively on the vehicles' computerized control systems. Attachment W, thus, required ASE certification for all Fleet Technician positions, a newly-introduced job category in the VRM that was distinct from the Automotive Mechanic category.

20. In December of 2017, however, PEPCO entered into a revised agreement with Local 1900 that, among other things, transferred Automotive Mechanics with at least 20 years of combined automotive and maintenance experience to the Fleet Technician Occupational Group without having to first obtain or maintain ASE Certification. This revision was the culmination of a grievance process that Local 1900 pursued on behalf

of the Automotive Mechanics in connection with issues arising from the 2009 supplement to the CBA, including Attachment W. As a result, Local 1900 then withdrew its grievance.

21. By December 2017, however, each of the Plaintiffs had *already* retired from PEPCO, each having felt he was under duress to do so.

**PEPCO Managers Had Implemented Attachment W in Ways that Discriminated on the Basis of Age Against the Plaintiff and Other Members of the Automotive Mechanics Group**

22. From 2009 through the end of 2017, PEPCO operated the Forestville Service Center (and other affected locations) using the two-track job structure that Attachment W permitted. However, Mr. Nimmerichter and other subordinate managers of the VRM did so with a purpose and effect to force out, through retirement and other adverse employment actions, the generally older Automotive Mechanics in favor of the Fleet Technicians, who, by-and-large, were younger.

23. On numerous occasions, both at official events – such as Shop Safety Meetings – and in informal settings, Mr. Nimmerichter explained to members of the Automotive Mechanics Group that PEPCO regarded the Fleet Technician Group as being a "blue print for the future." The Automotive Mechanics, Mr. Nimmertichter further lectured, were, by contrast, "on the last leg of the journey of life" and, thus, should "all look into retirement." [*See, for example*, email, dated February 24, 2015, from Randy A. McCollough, entitled "Aging Work Force," attached and marked as, "Plaintiff's Attachment No. 9."]

24. The managers overseeing the VRM, accordingly, engaged in an unrelenting, concerted effort to force the retirement from PEPCO of those members of the VRM Mechanics Group who were eligible to do so by virtue of tenure and age.

25. Furthermore, PEPCO managers, including Mr. Nimmerichter, had acknowledged, as early as 2011, that the work rules permitted by Attachment W could unfairly cost members of the Automotive Mechanics Group opportunities for leadership slots and overtime, even though "the Fleet Tech position and the Mechanic position [were] basically the same job with the exception of the ASE certifications." [*See, for example,* email, dated July 28, 2011, from Mr. Nimmerichter, entitled, "classification and overtime roster," attached and marked as, "Plaintiff's Attachment No. 10."]

### V.   CAUSES OF ACTION

#### A.   Count I – Age Discrimination (Disparate Impact) in Violation of the Age Discrimination in Employment Act (29 U.S.C. §§ 621 to 634)

26. Paragraphs 1 through 25, above, are incorporated herein by reference and made this paragraph 26.

27. Between 2009 and 2017, with the implementation of Attachment W, PEPCO, by and through the conduct of Mr. Nimmerichter and other subordinate managers of the VRM, subjected the Plaintiffs, as members of the Automotive Mechanics Occupational Group, to disparate treatment in opportunities for promotions, overtime, and wage increases.

28. The basis for such disparities was, in whole or in part, in connection with the Plaintiffs' respective ages, that is, over the age of 40.

29. VRM management *did*, however, provide these opportunities to the members of the favored Fleet Technicians Occupational Group.

30. Furthermore, Mr. Nimmerichter improperly pressured the Plaintiff members of the Automotive Mechanics Occupational Group to retire from the VRM in favor of members of the Fleet Technicians Occupational Group, who were, generally, younger.

31. As a direct and proximate result of PEPCO's treatment of the Plaintiffs, each suffered and continues to suffer, among other things, lost earnings and benefits, severe humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

**B. Count II – Age Discrimination (Hostile Work Environment) in Violation of the Age Discrimination in Employment Act (29 U.S.C. §§ 621 to 634)**

32. Paragraphs 1 through 31, above, are incorporated herein by reference and made this paragraph 32.

33. Between 2009 and 2017, The Plaintiffs were subjected to harassment by PEPCO's agents and employees, including Mr. Nimmerichter.

34. The conduct of PEPCO's agents and employees between 2009 and 2017 was not welcomed by the Plaintiffs.

35. The conduct of PEPCO's agents and employees between 2009 and 2017 focused directly on the age of the Plaintiffs and was undertaken because of their age.

36. The conduct of PEPCO's agents and employees between 2009 and 2017 was so severe and pervasive that reasonable persons in the position of the Plaintiffs would find the work environment in the VRM to be hostile or abusive.

37. The Plaintiffs *did* believe that their work environment in the VRM between 2009 and 2017 to be hostile or abusive as a result of the conduct of PEPCO's agents and employees.

38. PEPCO's management knew or should have known of this abusive conduct because some or all of the Plaintiffs had complained about the abusive conduct and, furthermore, senior management-level employees of PEPCO, including Mr. Nimmerichter, were complicit in the abusive conduct.

39. PEPCO did not exercise reasonable care to prevent harassment the VRM Mechanics on the basis of age and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

40. As a direct and proximate result of PEPCO's treatment of the Plaintiffs, each suffered and continues to suffer, among other things, lost earnings and benefits, severe humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

41. Moreover, PEPCO's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to the rights of the Plaintiffs to be free from discrimination based on their age.

C. **Count III – Breach of the Implied Contract Engendered by the Potomac Electric Power Company EEO Policies**

42. Paragraphs 1 through 41, above, are incorporated herein by reference and made this paragraph 42.

43. Exelon's Policy Against Discrimination (designated as HR-AC-72), to which Potomac Electric Power Company is subject, prohibits discrimination based on unlawful factors such age and race and other protected characteristics.

44. Potomac Electric Power Company had, before its March 2016 merger with Exelon Corporation, similarly operated under equal employment opportunity policies that prohibited discrimination based on unlawful factors, including age and race, and which, furthermore, prohibited harassment in the workplace.

45. The disparate treatment and indignities accorded to the Plaintiff members of the Automotive Mechanics Occupational Group between 2009 and 2017 violated these EEO principles, upon which the Plaintiffs and others relied.

46. As a result, the Defendants, by and through the actions of VRM management, breached the implied contract for fair and equitable treatment that the Defendants' EEO policies were meant to and did engender.

47. As a direct and proximate result, the Plaintiffs, who relied upon these implied contracts, suffered and continues to suffer, among other things, lost earnings and benefits, severe humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

*        *        *

WHEREFORE, the premises considered, Plaintiffs Richard Smith, Randy McCullough, Dennis Harris, and Angelo Powell, each hereby respectfully requests that this Honorable Court:

(a) Enter judgment on behalf of each of the Plaintiffs against the Defendants;

(b) Award each of the Plaintiffs back pay and front pay;

(c) Award each of the Plaintiffs compensatory and other damages of more than $75,000;

(d) Award each of the Plaintiffs their respective court costs, expenses, attorneys' fees, prejudgment and post-judgment interest;

(e) Declare that the Defendant's conduct was in violation of the Age Discrimination in Employment Act; and

(f) Grant such other relief as this Court deems just and proper.

June 17, 2019    Respectfully submitted,

   /s/_____
Edward James Leyden, #16913
***LEYDEN LAW LLC***
14300 Gallant Fox Lane, Suite 103
Bowie, Maryland 20715
301.390.6600
301.464.7357 (facsimile)
ejleyden@leydenlaw.com
*Counsel for Plaintiffs Richard Smith, Randy McCullough, Dennis Harris, and Angelo Powell.*

## JURY DEMAND

The Plaintiffs Richard Smith, Randy McCullough, Dennis Harris, and Angelo Powell each demands trial by jury on all issues contained herein.


  /s/  Edward James Leyden_____
Edward James Leyden, #16913
14300 Gallant Fox Lane, Suite 103
Bowie, Maryland 20715
301.390.6600
301.464.7357 (facsimile)
ejleyden@leydenlaw.com
*Counsel for Plaintiffs*
*Richard Smith, Randy McCullough,*
*Dennis Harris, and Angelo Powell.*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Complaint was filed electronically this 17th day of June 2019 via CM/ECF.

  /s/ Edward James Leyden_____
Edward James Leyden