UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

RICHARD SMITH,
RANDY McCULLOUGH,
DENNIS HARRIS and
ANGELO POWELL,

    Plaintiffs,

v.

POTOMAC ELECTRIC POWER CO.,

    Defendant.

Civil Action No. TDC-19-1764

**MEMORANDUM OPINION**

Plaintiffs Richard Smith, Randy McCullough, Dennis Harris, and Angelo Powell have filed suit against Defendant Potomac Electric Power Company ("PEPCO"), alleging that they were subjected to age discrimination while employed by PEPCO in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (2018), and that this misconduct also breached implied contractual obligations found in PEPCO's equal employment opportunity ("EEO") policies. Presently pending before the Court is PEPCO's Motion to Dismiss or in the Alternative Summary Judgment. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The Court previously addressed related allegations of age discrimination at PEPCO in *Webb v. Potomac Elec. Power Co.*, No. TDC-18-3303, 2020 WL 1083402 (D. Md. Mar. 6, 2020), which has now been consolidated with the present case for purposes of discovery. The Court

incorporates the relevant portions of that memorandum opinion here. For purposes of resolving the pending Motion, the Court accepts as true the facts asserted in Plaintiffs' Complaint.

**I.        Attachment W**

In 2009, PEPCO added "Attachment W" to its Collective Bargaining Agreement ("CBA") with Local 1900 of the International Brotherhood of Electrical Workers ("the Union"). Compl. at 2, ECF No. 1. Attachment W, which applied to employees of PEPCO's Vehicle Resource Management Department ("VRM"), was ostensibly meant to help ensure that PEPCO's automotive mechanics had the skills to repair PEPCO's evolving fleet of vehicles, which included newly introduced hybrid vehicles. Attachment W introduced into VRM the new job category of Fleet Technician, which was distinct from the job category of Automotive Mechanic. In order for an existing Automotive Mechanic to obtain a position as a Fleet Technician, that individual first needed to obtain a certification from the National Institute for Automotive Service Excellence ("ASE Certification"). By contrast, external Fleet Technician hires were given 18 months from the start of their employment to obtain an ASE Certification. Plaintiffs claim that employees in both positions did essentially the same work and that PEPCO managers acknowledged that "the Fleet Tech position and the Mechanic position [were] basically the same job with the exception of the ASE certifications." *Id*. at 12.

Plaintiffs allege that a variety of employment benefits were limited to Fleet Technicians. They assert that "the accepted policy and practice" was to assign opportunities for overtime pay only to the Fleet Technicians, to the exclusion of Automotive Mechanics. *Id.* at 4. Automotive Mechanics were also blocked from temporarily filling a "Lead" position, even if there was an available Automotive Mechanic with more experience and years of service than the available Fleet Technicians. *Id.* Attachment W also placed Automotive Mechanics who were in pay grades 16

and 17 on a "restricted roster," which "froze an Automotive Mechanic at his then-current rank and rendered him ineligible for further advancement in the VRM." *Id.* If and when these Automotive Mechanics retired, their positions would be eliminated.

When Attachment W was implemented, the Automotive Mechanics were generally over 40 years of age and older than the Fleet Technicians. According to Plaintiffs, this was no accident. They allege that the VRM's managers, in particular Harvey Nimmerichter, implemented Attachment W "with a purpose and effect to force out, through retirement and other adverse employment actions, the generally older Automotive Mechanics in favor of the Fleet Technicians, who, by-and-large, were younger." *Id.* at 11. Plaintiffs also assert that Nimmerichter repeatedly stated in both formal and informal settings that PEPCO considered the Fleet Technician Group a "blue print for the future." *Id.* By contrast, Nimmerichter stated on numerous occasions that the Automotive Mechanics were "on the last leg of the journey of life" and should "all look into retirement." *Id.*

Each Plaintiff was a PEPCO employee in the VRM. Plaintiff Richard Smith was born in 1953, joined PEPCO in 1982 as a Garage Attendant B in the Transportation Maintenance Department, and retired on January 1, 2015 as a Fleet Technician A in the VRM. Plaintiff Randy McCullough was born in 1955, joined PEPCO in 1974, and retired in December 2017 as a Lead Mechanic. Plaintiff Dennis W. Harris was born in 1953, joined PEPCO in 1981 as a Garage Attendant B, was eventually promoted to an Automotive Mechanic A, and retired on August 1, 2015. Plaintiff Angelo Powell was born in 1955, joined PEPCO in 1978 as a Garage Attendant B, eventually became a Lead Automotive Mechanic in pay grade 17—the highest level in his job classification in the VRM—and retired on March 1, 2017. They all claim that, as a result of their classification as Automotive Mechanics, they were subjected to disparate treatment in pay and

3

other employment benefits, as discussed above, based on their age. For example, McCullough asserts that his placement on the restricted roster prevented him from applying for a supervisory position in 2016, and Smith asserts that he was reassigned from the night shift to the day shift against his wishes in order to accommodate Fleet Technicians.

In December 2017, as a result of a grievance initiated by the Union related to Attachment W, PEPCO entered into a new agreement with the Union under which Automotive Mechanics with 20 years of relevant experience were transferred to the Fleet Technician Group without needing an ASE Certification.

## II.   Procedural History

All Plaintiffs filed Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in which they alleged age discrimination against them as Automotive Mechanics. Specifically, on October 28, 2015, Smith filed an EEOC Charge in which he alleged age discrimination and a hostile work environment from 2009 until he was forced to retire on January 1, 2015 in what he deemed to be a constructive discharge. He asserted that Nimmerichter used the ASE Certification requirement to favor younger mechanics over older ones and that even when Smith obtained an ASE Certification, Nimmerichter still resisted promoting him and told him to either leave or retire. McCullough filed his EEOC Charge on November 5, 2015, alleging similar allegations of age discrimination and hostile work environment from 2009 up to the date of filing, including that the age discrimination included his placement on the restricted roster and Nimmerichter's refusal to provide him with training.

Harris filed his EEOC Charge on January 28, 2016, asserting age discrimination and hostile work environment and providing similar allegations to those of Smith and McCullough, but also claiming that after he suffered a 2015 workplace injury, Nimmerichter refused to allow him to go

on light duty, that Nimmerichter scolded him in front of others at a safety meeting for failure to wear safety glasses, and that he was constructively discharged on August 1, 2015.  Finally, Powell filed his EEOC Charge on February 11, 2016, alleging both race and age discrimination.  In addition to the same allegations as other Plaintiffs, Powell asserted that he was prevented from taking business trips while similarly situated employees were not.  While Powell did not explicitly allege a hostile work environment, he alleged that the age discrimination continued from June 1, 2009 to December 7, 2015 and included Nimmerichter's use of the term "[b]lue print of the future" and recommendation that Powell and others leave or retire because of their seniority.  Powell EEOC Charge at 2, Compl. Ex. 7, ECF No. 1-2.  Plaintiffs were all sent EEOC Right-to-Sue Letters between March 18 and March 20, 2019.

Plaintiffs filed suit in this Court on June 17, 2019.  In Count I of the Complaint, Plaintiffs allege age discrimination in violation of the ADEA, based on the disfavored status of Automotive Mechanics in the distribution of "opportunities for promotions, overtime, and wage increases" between 2009 and 2017 and improper pressure by Nimmerichter to force them to retire.  Compl. at 12.  In Count II, they allege a hostile work environment based on age in violation of the ADEA, based on severe and pervasive harassment by Nimmerichter and others between 2009 and 2017.  In Count III, they allege a breach of an implied contract arising from PEPCO's EEO policies, which promise fair and equitable treatment and bar discrimination based on age and harassment in the workplace.  Where Plaintiffs attached their EEOC Charges to the Complaint, the Court deems the allegations made in them to be incorporated into the Complaint.

## DISCUSSION

In its Motion, PEPCO seeks dismissal of Plaintiffs' Complaint in its entirety or, in the alternative, summary judgment in its favor on all claims, on the grounds that (1) Plaintiffs have

not pleaded sufficient facts to state a claim of age discrimination under the ADEA; (2) Plaintiffs' ADEA claims are barred by the statute of limitations; (3) Plaintiff Powell failed to exhaust administrative remedies on his hostile work environment claim; (4) none of Plaintiffs allege sufficient facts to assert a hostile work environment claim under the ADEA; and (5) Plaintiffs' claim for breach of an implied contract fails to state a plausible claim for relief and in any event is barred by the statute of limitations.

## I. Legal Standards

PEPCO seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements do not suffice.  *Id.*  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).  Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Here, the Court will consider Plaintiffs' EEOC Charges and responsive Right-to-Sue Letters, attached to the Complaint, as documents integral to the Complaint.

Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). The proper procedure for asserting a need for discovery before a summary judgment ruling is to file an affidavit pursuant to Rule 56(d) explaining why the party needs discovery to establish the existence of a genuine issue of material fact. *Id.* If a party does not submit a Rule 56(d) affidavit, the Court may still consider a request for discovery presented in the non-movant's memorandum of law opposing summary judgment. *Id.* at 244-45.

While Plaintiffs have not filed a Rule 56(d) affidavit, in their memorandum in opposition to the Motion, they request an opportunity to engage in discovery to more fully develop facts about PEPCO's EEO policies and processes for remedying discrimination in the workplace. Because the proceedings before the Court are in the earliest stage, and Plaintiffs have articulated a persuasive reason that discovery is required before summary judgment could fairly be considered, the Court will construe the Motion as a Motion to Dismiss only and will not consider any evidence other than the EEOC Charges. Fed. R. Civ. P. 12(b)(6), 12(d).

## II.     Age Discrimination

In Count I, Plaintiffs allege that PEPCO discriminated against the Automotive Mechanics, who are generally over 40 years old, and in favor of the Fleet Technicians, who are generally younger, with respect to opportunities for promotions, overtime, and wage increases. PEPCO argues that Count I should be dismissed both because it fails to state a plausible claim and because it is barred by the statute of limitations.

### A.     Failure to State a Claim

Pursuant to the ADEA, employers may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such

individual's age" and may not "limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [one's] status as an employee because of such individual's age[.]" 29 U.S.C. §§ 623(a)(1), (2). In order to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show that (1) the plaintiff was over 40 years of age at the relevant time; (2) the plaintiff was qualified for the position and meeting legitimate expectations; (3) the plaintiff was nevertheless subjected to an adverse employment action; and (4) substantially younger individuals with comparable qualifications were treated more favorably. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). A plaintiff does not need to establish a *prima facie* case of discrimination in order to defeat a Rule 12(b)(6) motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015) (in a race discrimination case under Title VII of the Civil Rights Act of 1964, applying *Swierkiewicz* even after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018) (per curiam) (applying this rule in an ADEA case). Even if it does not specifically address each element of a *prima facie* case of discrimination, a complaint states a claim if it provides sufficient factual allegations to "support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586; *see also Swierkiewicz*, 534 U.S. at 511 (stating that all elements of a *prima facie* case need not be proven if there is direct evidence of discrimination).

Here, Plaintiffs' allegations meet this requirement. First, Plaintiffs have alleged that employees in their job category were routinely denied opportunities for promotions and overtime, and they unfairly had their pay grades frozen. Where all of these actions have a direct impact on an employee's pay, these are exactly the kinds of actions that can give rise to claims of age

discrimination. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998) (holding that under Title VII, "[a] tangible employment action in most cases inflicts direct economic harm" and "constitutes a significant change in employment status, such as . . . failing to promote . . . or a decision causing a significant change in benefits"). *Daniels v. United Parcel Serv.*, 701 F.3d 620, 635 (10th Cir. 2012) (holding that employment decisions such as "failing to promote" and those "causing a significant change in benefits" are adverse employment actions actionable under the ADEA). They have also alleged that younger employees in the Fleet Technician Group were treated more favorably by receiving overtime assignments and not being barred from receiving raises and promotions. Moreover, Plaintiffs have alleged that their manager, Nimmerichter, made multiple statements indicative of a bias against older employees. On numerous occasions, Nimmerichter described those in the disadvantaged Automotive Mechanic Group—who were generally over 40 years old—as "on the last leg of the journey of life" and stated that they should "all look into retirement." Compl. at 11. At the same time, he referred to the beneficiaries of the alleged age discrimination—the Fleet Technicians, who were generally younger—as the "blue print for the future." *Id.* Such language can give rise to an inference of age discrimination. *See Baqir v. Principi*, 434 F.3d 733, 734-35, 744-45 (4th Cir. 2006) (inferring actionable age-based animus against a 60-year-old interventional cardiologist based on the statement that "interventional cardiology is meant for people in their thirties"). Plaintiffs have further alleged that Nimmerichter specifically told each of them that he should leave PEPCO or retire. Such statements provide a plausible basis to conclude that the disparate treatment of Automotive Mechanics was based on age discrimination.

Where Plaintiffs have asserted that they were subjected to adverse employment actions and have stated facts supporting an inference of discrimination, they have stated a plausible claim for

relief at this stage of the case. Where PEPCO has not challenged the sufficiency of the allegations supporting Plaintiffs' alternate theory of age discrimination on the basis of disparate impact, the Court need not address that theory.

### B.     Statute of Limitations

PEPCO also claims that Count I must be dismissed because Plaintiffs do not allege in their Complaint any discrete discriminatory acts taken within the limitations period set forth in the ADEA. Under the ADEA, an administrative charge of age discrimination arising in Maryland must be filed "within 300 days after the alleged unlawful practice occurred." *See* 29 U.S.C. § 626(d)(1)(B); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579-80 (D. Md. 2007) (noting that the 300-day limitations period applies to cases arising in Maryland because it is a "deferral state" with a "State or local agency with authority to grant relief from such practice"). Therefore, a claim for age discrimination based on activity occurring outside these periods is time-barred. *See* 29 U.S.C. § 626(d)(1); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). On the issue of statute of limitations, the operative event is the adverse employment action. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). An adverse employment action "is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Where Smith filed his EEOC Charge on October 28, 2015, McCullough filed his on November 5, 2015, Harris filed his on January 28, 2016, and Powell filed his on February 11, 2016, only claims for which there was an adverse employment action that occurred on or after January 1, 2015, January 9, 2015, April 3, 2015, and April 17, 2015, respectively, and before the filing of the applicable EEOC Charge, would be timely. *See* 29 U.S.C. § 626(d)(1).

The ADEA's limitations period is not jurisdictional, such that the 300-day rule is akin to a statute of limitations which PEPCO may assert as an affirmative defense. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (ruling that Title VII's then-30-day time limit to bring suit in court after receiving a right-to-sue letter was a statute of limitations subject to the rebuttable presumption of equitable tolling, rather than a jurisdictional bar to suit). A claim may be dismissed on statute of limitations grounds only in "relatively rare circumstances" and only when the "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Attachment W, the policy that created the disparity between Fleet Technicians and Automotive Mechanics, was adopted in 2009, long before Plaintiffs' respective 300-day periods, and Plaintiffs do not identify the specific date of any particular adverse employment action within the 300-day time period, such as a denial of a request to be transferred to the Fleet Technician position, or the denial of a particular wage increase or opportunity for overtime pay that was provided only to Fleet Technicians. However, construed in the light most favorable to Plaintiffs, the Complaint alleges that following the adoption of Attachment W, Plaintiffs suffered a series of denials of opportunities for promotions, overtime, and wage increases from 2009 to 2017 that were given instead to Fleet Technicians and were motivated by age discrimination. Where it is thus not clear from the face of the Complaint that Plaintiffs' allegations necessarily fall outside the statute of limitations, the Court will deny PEPCO's Motion as to the statute of limitations. In order to prevail on its claims, Plaintiffs will each be required at trial to present evidence of a specific adverse employment action within the applicable limitations period.

**III.     Hostile Work Environment**

PEPCO also seeks dismissal of the hostile work environment claim alleged in Count II of the Complaint.  In order to state a hostile work environment claim, Plaintiffs must allege that (1) they experienced "unwelcome harassment"; (2) the harassment was based on their age; (3) the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) there is "some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).  "While a plaintiff is not charged with pleading facts sufficient to prove [a] case, as an evidentiary matter, in [the] complaint, a plaintiff is required to allege facts that support a claim for relief." *Id.*  A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  A court's determination whether such an environment exists includes a consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).

As a threshold issue, PEPCO argues that Powell failed to exhaust administrative remedies as to this claim because he did not explicitly refer to a "hostile work environment" in his EEOC Charge.  However, claims raised for the first time in federal court are nevertheless deemed administratively exhausted "so long as they are like or reasonably related to charges in the original administrative complaint, and if they reasonably could have developed from the agency's investigation of the original complaint." *Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019).

Here, Powell specifically stated that the age discrimination against him continued for a six-year period from 2009 to 2015 and included public comments by Nimmerichter pressing older employees to consider retirement and describing the job category populated by younger employees as the "blue print for the future." Powell EEOC Charge at 2. He also referenced being targeted when he was removed from business trips and denied training opportunities. Where the facts underlying the disparate treatment and hostile work environment claims overlap significantly, the Court finds that Powell may proceed with this claim because it is "reasonably related to charges in the original administrative complaint" and "reasonably could have developed from the agency's investigation of the original complaint." *Stewart*, 912 F.3d at 706. Likewise, PEPCO's other exhaustion argument made in passing, that lost overtime opportunities cannot be considered because they were not explicitly referenced in the EEOC Charges, fails because such claims plainly were encompassed by the broader age discrimination claim and would have been identified through a reasonable investigation. *See id.*

PEPCO also asserts that Plaintiffs have failed to allege sufficient facts to state a valid hostile work environment claim. Viewing the allegations in the light most favorable to Plaintiffs, the Complaint alleges that Nimmerichter and other PEPCO managers mistreated older employees by denying them opportunities for promotions, overtime, and wage increases over a lengthy period of time and by imposing higher expectations for older workers to set them up for failure, including by not providing otherwise available training or materials to help study for the ASE test. In addition, the Complaint alleges that Nimmerichter and other managers subjected them to specific harassing conduct from 2009 to 2017. The harassment consisted of numerous instances, at both official events and shop safety meetings, in which Nimmerichter told Plaintiffs and other Automotive Mechanics that they were "on the last leg of the journey of life" and should "all look

13

into retirement," while describing the Fleet Technicians as the "blue print for the future."  Compl. at 11.  Nimmerichter also told each Plaintiff directly that he should leave PEPCO or retire, and he took actions specifically against individual Plaintiffs when he refused to allow Harris to work on light duty after an injury and removed Powell from business trips.  On one occasion, Nimmerichter verbally berated Harris in front of other personnel when he raised a question about safety glasses.

The statements attributed to Nimmerichter, though exhibiting an age-based animus and arguably insulting and humiliating, were not so severe that they would create a hostile work environment if stated only once or infrequently.   In *Boyer-Liberto*, the United States Court of Appeals for the Fourth Circuit noted in the race discrimination context that, although "an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious," the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."  786 F.3d at 277 (internal citations and alterations omitted).  However, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."  *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991).  Here, Plaintiffs allege that Nimmerichter explicitly denigrated them on the basis of their age on "numerous occasions," including in front of their colleagues.  Compl. at 11. Moreover, Nimmerichter was their manager, which increases the severity of the harassment.  *See Boyer-Liberto*, 786 F.3d at 278.  When combined with other incidents such as the scolding of Harris in front of his colleagues, Nimmerichter's repeated and public age-based harassment and his explicit statements pushing Plaintiffs to retire are sufficient to plead a hostile work environment under the ADEA.  *See Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1159 (E.D. Cal. 2006) (holding that, under a state analog to Title VII, plaintiff's evidence of "consistent comments about

plaintiff's age over . . . two and a half years" created a triable issue of fact as to whether the defendant had created a hostile work environment). The Court will therefore deny PEPCO's Motion as to Count II.

## IV. Breach of Contract

Finally, PEPCO also argues that Plaintiffs' breach of implied contract claim asserted in Count III, which is based on PEPCO's EEO policies, fails as a matter of law. The Court has already addressed this specific argument in *Webb* and concluded that at the motion-to-dismiss stage, a breach of implied contract claim based on PEPCO's EEO policies may proceed. *See Webb*, 2020 WL 1083402, at *6-7. Where Plaintiffs' breach of implied contract claim mirrors the claim asserted in *Webb*, the Court adopts its analysis in that case, incorporates it here by reference, and finds that Plaintiffs have stated a plausible claim for relief in Count III. *See id.*

PEPCO also raises a statute of limitations defense against all Plaintiffs, arguing that their claims arose in 2009 and were therefore initiated long after Maryland's three-year statute of limitations on civil claims had run. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2013). As in *Webb*, the Court finds that where Plaintiffs McCullough and Powell continued to work for PEPCO in 2017, and the Complaint can be construed to assert that the alleged breach of implied contract included actions occurring in 2017, their breach of implied contract claims are not time-barred on the face of the Complaint, which was filed on June 17, 2019. *See Webb*, 2020 WL 1083402, at *7. However, Plaintiffs Smith and Harris both retired in 2015. While Smith and Harris may have delayed bringing this state law claim while waiting for the EEOC's decisions on their EEOC Charges, the pendency of an EEOC investigation does not toll the statute of limitations on separate state law claims. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462-66 (1975) (holding that Title VII claims did not toll the governing state law statute of limitations

applicable to a separate claim under 42 U.S.C. § 1981); *McNeal v. Montgomery Cty.*, 307 F. App'x 766, 771-72 (4th Cir. 2009) (holding that the statute of limitations on the plaintiff's state law claims may not be equitably tolled during the time in which he was exhausting his related Title VII claims). Where this case was brought in 2019 and the allegations of Smith and Harris all relate actions taken prior to their retirement in 2015, the Court finds that the breach of implied contract claims of Smith and Harris are time-barred. The Court will therefore dismiss Count III as to Smith and Harris, while allowing Count III to proceed as to McCullough and Powell.

## CONCLUSION

For the foregoing reasons, PEPCO's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted on Count III as to Plaintiffs Smith and Harris. It will be otherwise denied. A separate Order will issue.

Date: April 17, 2020                     /s/ *Theodore D. Chuang*
                                         THEODORE D. CHUANG
                                         United States District Judge